UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**GRANJAS AQUANOVA S.A. de c.v.,**
**A Mexican Corporation**                                              **PLAINTIFF**

v.                             CASE NO. 3:07-CV-00168 BSM

**HOUSE MANUFACTURING COMPANY,**
**INC.; JOHN DOES 1-10; and ABC**
**ENTITIES 1-10**                                                      **DEFENDANTS**

## ORDER

The motion to vacate deadline for adding parties and request for leave to file amended complaint filed by plaintiff Granjas Aquanova S.A. de C.V. ("Granjas") is granted and the June 29, 2009 trial date is hereby vacated.

Granjas moves to vacate the deadline for the addition of parties and requests permission to add ECS House Industries, Inc. ("ECS House") as a defendant. Defendant House Manufacturing Company, Inc. ("House") objects to the motion. Granjas contends that ECS House is legally liable to for the damages caused by House under the continuation exception to the general rule of non-liability applicable to successor corporations.

In Arkansas, "[t]he general rule is that a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation." *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 26, 894 S.W.2d 897, 903 (1995). The Arkansas Supreme Court recognizes an exceptions to the general rule "where the purchasing corporation is a mere continuation of the selling corporation." *Id*. "The majority of courts considering the 'mere continuation' exception emphasize a common identity of officers,

directors, and stock between the selling and purchasing corporations." *Swayze v. A.O. Smith Corp.*, 694 F. Supp. 619, 622 (E.D. Ark. 1988),

The Arkansas Supreme Court in *Ford Motor* held that sufficient evidence existed to submit to the jury the issue of whether the purchaser corporation was liable under the continuation exception. 320 Ark. at 26-28. There, the testimony indicated that the purchaser bought all or substantially all of the original company's assets, including inventory, receivables, and work in process. *Id.* at 26. Additionally, the factor employees and most of the office employees of the original company continued in their employment, and the original company required the buyers to individually execute an "indemnity assumption of liability agreement" as part of the sale. *Id.* Although the purchaser was "in charge after the purchase," he relied on employees of the original company to continue the day-to-day operation of the company. *Id.* at 27. The purchasing company continued to make the same product as the original company for a substantial period of time, and other managers and employees of the original company testified as to the continued employment and the continuity in production of goods after the purchase. *Id.*

In *Swayze*, however, this court held that a purchasing company was not a mere continuation under the exception to the general rule. 694 F. Supp. at 622. There, the purchasing company retained twenty percent of the original work force and reserved the right to have an entity purchase a used separation and feeding machine. *Id.* The purchaser company had the blueprints for the machine at issue, used substantially the same logo as the

original company, and was assigned an exclusive sales agency agreement with a company owned by the former president of the original company, possessed the original company's documents and records, and was in the same location as its predecessor. *Id.* There was not, however, any evidence of an intermingling of directors and officers, no shared stock, and no indication that the employees retained by the purchasing company were in managerial positions.

Granjas asserts that, during the April 20, 2009 deposition of Barry House, it learned that all of House's assets have been purchased by ECS House, and that since September 1, 2008, ECS House has been operating as a mere continuation of House. Granjas asserts that ECS House has continued operating the same business as House, including advertising, manufacturing, and selling the same products; employing the key personnel from House to handle the day-to-day operations; operating in the same location; using the same telephone and facsimile numbers; and advertising its product using House's website and the House name.

In response, House asserts that it did not sell any assets to ECS House. Rather, House states that it leased its production and manufacturing equipment from General Electric Capital Corporation ("GE"), but when it was unable to make its lease payments, GE filed a replevin action. House states that it surrendered the leased equipment to GE pursuant to a consent order for delivery of property entered on June 13, 2008.

House submits the affidavits of Danny Bartleson, the president and owner of one-half

of the outstanding stock in ECS House, and John H. Smith, the vice-president and owner of the other one-half of the outstanding stock in ECS House.  Bartleson's affidavit, which is reiterated by Smith's affidavit, states that ECS House has purchased no assets from House, except for some older pick-up trucks.  Bartleson also states that he personally bought manufacturing equipment from GE at public auction, which had been repossessed from House by GE.  He transferred the equipment to B.S. Investments, Inc. (owned by Bartleson and Smith), which then leased it to ECS House.  He states that the transactions were structured specifically to avoid the possibility of ECS House incurring the liability of House.

Bartleson states that ECS House has different shareholders, and that Barry and Chad House were hired as employees of ECS House, but have no management or supervisory responsibilities.  He states that only one other office worker was hired by ECS House.  He states ECS House leased the building owned by House to avoid a costly move of the equipment, and is negotiating to purchase the building.  House is allowed to maintain one area of the building to store and maintain its corporate records until all business affairs are concluded.

In addition to the affidavits of Bartleson and Smith, House also argues that Granjas's motion is untimely because Granjas was aware of the situation two months ago, yet waited to file the instant motion two weeks before trial.  House asserts that even if the court grants the motion, there is no need to jeopardize the trial date because the issue of successor liability only arises in the event of an unsatisfied plaintiff's judgment.  In the event of a satisfied

judgment or defendant's verdict, the matter is moot.

In its reply, Granjas asserts that a direct purchase is not required for successor liability, as such a requirement would elevate form over substance. Granjas also asserts that ECS House cannot be pursued after this case is tried if ECS House is not given a full and fair opportunity to litigate the issues of House's liability. Granjas states that House has admitted that it is no longer an operating entity and has no assets from which a judgment could be paid.

It is unclear whether Granjas can establish that ECS House is a mere continuation of House; however, Granjas is permitted to add ESC House as a defendant and the trial will be continued. Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Here, granting the request for leave to amend will not substantially prejudice House, but denial of leave would possibly foreclose the ability of Granjas to recover damages from ECS House, if it is determined that ECS House is liable. Furthermore, the issues raised here are more appropriately addressed in a motion to dismiss or motion for summary judgment. The court urges Granjas to promptly file and serve the complaint and summons on ECS House to allow this case to proceed efficiently.

Accordingly, plaintiff's motion to vacate deadline for adding parties and request for leave to file amended complaint (Doc. No. 42) is granted. The court will issue a new scheduling order.

IT IS SO ORDERED this 24th day of June, 2009.

_____
UNITED STATES DISTRICT JUDGE