**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**GRANJAS AQUANOVA S.A. de C.V.,
A MEXICAN CORPORATION**                                                        **PLAINTIFF**

v.                              Case No. 3:07CV00168 BSM

**HOUSE MANUFACTURING COMPANY, Inc.,
ECS HOUSE INDUSTRIES, Inc.,JOHN DOES 1-10;
and ABC ENTITIES 1-10.**                                                       **DEFENDANTS**

## ORDER

The second motion for summary judgment (Doc. 77) of defendant House Manufacturing, Inc. ("House") for dismissal of plaintiff Granjas Aquanova S.A. de C.V.'s ("Granjas") misrepresentation and Arkansas Deceptive Trade Practices Act claims, and for punitive damages, is denied.

### I.  FACTS

This case involves a dispute over the condition and suitability of aerator floats Granjas purchased from House. Plaintiff's statement of facts in opposition to House's second motion for partial summary judgment (Doc. No. 91)("Pl.'s SOF"). Granjas is a Mexican corporation engaged in shrimp farming in Western Mexico. *Id.*  House is an Arkansas corporation that manufactures aquaculture and wastewater equipment. *Id.*

Granjas farms shrimp on 76 hectares with eight growing ponds filled with seawater pumped directly from the Pacific Ocean. Pl.'s SOF ¶ 6; Dr. Eduardo Avalos Deposition 42, 44-46, attached as exhibit A to Doc. No. 91.  ("Avalos Dep., Pl.'s Ex. A").  Shrimp farming

requires artificial aeration because shrimp cannot survive unless oxygen is continually added to the ponds. *Id.* at 65-66.

In March 2003, Granjas's general manager, Dr. Eduardo Avalos ("Avalos"), spoke with House sales representative, Chad House, about purchasing floatation style aerators for Granjas's shrimp farm. *Id.* at 77, 79. Granjas relied on House's expertise to provide suitable equipment because Granjas lacked knowledge and experience with aerators. *Id.* at 80.

On March 10, 2003, Chad House sent Avalos specifications for a 10-horsepower chain drive aerator made of 316 grade stainless steel which Chad House represented as its saltwater model. See 2003 Specification Sheet attached as exhibit C to Doc. No. 91. House was aware that Granjas was using seawater pumped directly from the ocean. Barry House Deposition 117, attached as exhibit E to Doc. No. 91. ("B. House Dep., Pl.'s Ex E"). House was also aware that Granjas's shrimp could die if the aerators did not properly oxygenate the water. Chad House Deposition 89, 179, 180, attached as exhibit H to Doc. No. 91. (C. House Dep., Pl.'s Ex. H).

Due to financial problems faced by Granjas in March 2003, it was unable to purchase the 316 grade aerators from House at that time. Pl.'s SOF at ¶ 15. A year later, Avalos told Chad House that Granjas was ready to make the purchase. Pl.'s SOF at ¶ 18. On April 23, 2004, Chad House faxed Avalos an updated specification sheet and quote, an aerator layout drawing, and maintenance information regarding House's product. See Specifications Sheet attached as exhibit G to Doc. No. 91. In the specifications, the aerator's flotation tanks had

changed from 316 grade stainless steel to 304L grade stainless steel. C. House Dep., Pl.'s Ex. H, 144-146. Chad House told Avalos that 304L aerators would be a suitable, less expensive, alternative for Granjas's shrimp farm because House had used it in seawater applications in the past without any problems. *Id* at 146, 147.

On June 21, 2005, all of the 304L stainless steel floatation style aerators that Granjas purchased from House failed due to corrosion and leakage problems with the tanks. Granjas filed this case for breach of contract under the Contracts for the International Sale of Goods (CISG), breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of contract, promissory estoppel, unjust enrichment, products liability (negligence), misrepresentation and violation of the Arkansas Deceptive Practices Act. Granjas seeks punitive damages in addition to compensatory damages. On June 25, 2009, pursuant to House's motion for summary judgment (Doc. No. 24), Granjas's claims for breach of contract, breach of warranty, breach of implied warranty of fitness, promissory estoppel and unjust enrichment were all dismissed (Doc. No. 56).

House now moves for summary judgment on Granjas's misrepresentation and Arkansas Deceptive Trade Practices Act clams, as well as on its claim for punitive damages.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Christoffersen*

3

*v. Yellow Book U.S.A.,* 536 F.3d 947, 949 (8th Cir. 2008) (citing Fed. R. Civ.56; *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005))

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Further, "[t]he nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell,* 497 F.3d 822, 825 (8th Cir. 2007)(international citation and quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1985). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine . . ." *RSBI Aerospace, Inc., v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

### III. DISCUSSION

Summary judgment is denied as to Granjas's claims for misrepresentation and violation of the Arkansas Deceptive Trade Practices Act because there are genuine issues of material fact in dispute and a reasonable jury could find that House's representations were fraudulent because they were made either knowingly, or because those representations were asserted to be true when House lacked information to know whether they were in fact true. Summary judgment is denied as to Granjas's claim for punitive damages and this issue will be determined at trial.

A.   <u>Misrepresentation</u>

To succeed on its misrepresentation claim, Granjas must show the following:

(1) a false representation of a material fact; (2) knowledge or belief on the part of the person making the representation that the representation is false; (3) an intent to induce the other party to act or refrain from acting in reliance on the misrepresentation; (4) a justifiable reliance by the other party; and (5) resulting

5

damages."

*O'Mara v. Dykema*, 942 S.W.2d 854, 857 (Ark. 1997). In Arkansas, claims for misrepresentation and fraud are synonymous. *See South County, Inc., v. First Western Loan Co.*, 871 S.W.2d 325, 326 (1994). Further, there are two instances in which a statement could be fraudulent: (1) when one makes a representation that he knows is false; or (2) when one makes a representation that he asserts is true, although he does not actually know if the statement is true. *O'Mara*, 942 S.W.2d at 858.

Constructive fraud, while requiring proof of all the necessary elements of actual fraud, misrepresentation and deceit, may be proven "even when there is a complete absence of any moral wrong or evil intention." *Roach, v. Concord Boat Corp.,* 880 S.W.2d 305, 306 (Ark. 1994). Thus, "[n]either actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." *Lane v. Rachel*, 389 S.W.2d 621, 624 (Ark. 1965); *Beatty v. Haggard*, 184 S.W.3d 479, 485 (App. Ct. 2004). In fact, constructive fraud generally involves a mere mistake of fact. *Beatty*, 184 S.W.3d at 485.

In its motion for summary judgment, House argues that Granjas cannot prove that its representations were made with knowledge or belief that the representation was false. In support of this position, House points out that Avalos admits that he does not believe House intentionally misrepresented the quality or functionality of the subject aerators. House also argues that any misrepresentations made by Chad House were the result of an honest mistake and not an intentional misrepresentation.

In response, Granjas argues that House is not absolved from liability merely because Avalos stated that he does not believe Chad House's misrepresentation was intentional. This is true because Chad House represented that the stainless steel floats were suitable for seawater use when he had no legitimate reason for making that representation. Granjas argues that House had neither prior experience with its stainless steel floats in seawater nor had it conducted any research, testing, or investigation to determine the truth of its representation.

The statement that House relies on for its motion for summary judgment occurred in the deposition of Eduardo Avalos as follows: "Q. I know you can't read his [Chad House] mind, but I've also read the complaint in this lawsuit. Do you think Chad sold tanks knowing they would fail? A. In fact, that would be speculation. My opinion is that it was more ignorance than bad faith." Avalos Dep., Pl.'s Ex. A, 85-86.

When Avalos's statements and the entire record are viewed in the light most favorable to Granjas, there are genuine issues of material fact in dispute and therefore summary judgment is denied. Not only does Avalos's admission that he is only speculating as to Chad House's intent cause one to pause, but there is also a genuine issue of material fact as to whether Chad House represented the aerators to be suitable for Granjas when, in fact, he did not know whether they were suitable. House asserts that it had sold other aerators with 304L grade stainless steel tanks for sea and salt water applications without any problems similar to those suffered by Granjas. Granjas disputes this fact, arguing that House had no legitimate

justification for representing that stainless steel floats were suitable for seawater use. In support of Granjas's position, it points out that, although House had experience with saltwater applications in the 1990s, those experiences did not involve the use of stainless steel floatation aerators in seawater. Granjas also points out that, prior to 2003, House had neither tested nor sold its 304L grade stainless steel float-style aerators for use in seawater. Granjas further shows that House's two sales of stainless steel flotation style aerators prior to its representation to Granjas were sold for use in brackish water, not seawater. Indeed, Chad House admits that he was unaware of the differences in salt content between brackish water and seawater.

Viewed in a light most favorable to Granjas, there are genuine issues of material fact as to Granjas's misrepresentation claim. Therefore House's motion for summary judgment should be denied.

B.      Arkansas Deceptive Trade Practices Act

The Arkansas Deceptive Trade Practices Act (the "Act") prohibits "deceptive and unconscionable trade practices." Ark. Code Ann. §§ 4-88-107 *et seq*. In particular, the Act makes unlawful

> (1) Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality grade, style or model;
> ...
> (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade;

Ark. Code Ann. § 4-88-107(a). The Act is to be construed liberally and does not limit the types of unfair trade practices that are actionable to those actionable at common law or under other state laws. *State v. R&A Invest. Co., Inc.,* 985 S.W.2d 299, 302 (Ark. 1999). Indeed, an unconscionable act is one that is merely "an act that affronts the sense of justice, decency, or reasonableness. *Baptist Heath v. Murphy*, 226 S.W.3d 800, 810-11, fn.6 (Ark. 2006).

In its summary judgment motion, House argues that Granjas cannot prove that House knowingly made a false misrepresentation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods and services as required by the Act. In response, Granjas argues that House made knowingly false representations as to the value, quality, construction, use and testing of the aerators by describing them as high quality aerators for salt-water application. Granjas further asserts that, even if it is unable to prove that House's actions were knowing, House's acts were, at the very least, unconscionable, false, or deceptive. Granjas argues that House's practice of making representations about its aerators to potential customers, without any basis upon which to believe those representations were true, is inherently deceptive.

Viewing this issue in the light most favorable to Granjas, there is a genuine issue of material fact as to whether House's actions violated the Act. For that reason, summary judgment should be denied.

C.	Punitive Damages

In a June 25, 2009, order (Doc. No. 56), it was held that "the court will determine issues regarding punitive damages upon hearing the proof at trial." Consequently, although little, if anything, indicates that punitive damages are appropriate, the motion for summary judgment is denied.

D.	House's Amended Complaint

On June 24, 2009, Granjas was granted leave to file an amended complaint adding ECS House Industries Inc. (Doc. No. 53). On June 25, 2009, pursuant to House's motion for summary judgment (Doc. No. 24), Granjas's claims for breach of contract, breach of warranty, breach of implied warranty of fitness, promissory estoppel and unjust enrichment were all dismissed (Doc. No. 56). Granjas then filed its amended complaint on June 29, 2009 (Doc. No. 57). In its amended complaint, Granjas not only added ECS House Industries Inc. to this litigation, but it also republished its previously dismissed causes of action.

House argues that it was improper for Granjas to republish its previously dismissed causes of action in its subsequent amended complaint and asks the court to dismiss these claims for the second time. Granjas states that its amended complaint is not an attempt to revive its previously dismissed causes of action. Instead, Granjas asserts that the law is unclear as to whether previously dismissed causes of action should be republished in a subsequent amended complaint in order to preserve these matters for appeal. As a result, Granjas states that it republished the previously dismissed causes of action out of an

abundance of caution to preserve its record on appeal.

Granjas's amended compliant does not revive causes of action previously dismissed in the June 25, 2009, order (Doc. No. 56); however, its record is preserved for appeal.

## IV. CONCLUSION

For the reasons set forth herein, the second motion for summary judgment (Doc. No. 77) of defendant House Manufacturing, Inc. is denied.

IT IS SO ORDERED this 4th day of June, 2010.

_____
UNITED STATES DISTRICT JUDGE