**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**GRANJAS AQUANOVA S.A. de C.V.**                                                                          **PLAINTIFF**

**v.**                          **Case No. 3:07-CV-00168-BSM**

**HOUSE MANUFACTURING CO. INC.**                                                                **DEFENDANT**

**ORDER**

Granjas Aquanova S.A. de C.V. ("Aquanova") moves [Doc. Nos. 127, 132] for attorneys' fees, costs and prejudgment interest as a result of the jury verdict [Doc. No. 125] and judgment [Doc. No 126] in its favor. House Manufacturing ("House") objects. For the reasons set forth below, Aquanova's motion for attorneys' fees is granted in part and denied in part; its motion for costs is granted in part and denied in part; and its motion for prejudgment interest is denied.

I. ATTORNEYS' FEES

Aquanova moves [Doc. Nos. 127, 132] pursuant to Article 74 of the CISG and Ark. Code Ann. § 16-22-308 for an award of $446,738.10 in attorneys' fees. At issue is whether this award is required or permitted by either the CISG or Arkansas law. For the reasons set forth below, Aquanova is awarded $423,954.45 in attorneys' fees.

Article 74 of the CISG provides that "damages for breach of contract by one party consist of a sum equal to the loss, including loss of profit, suffered by the other party as a consequence of the breach" provided that the damages were foreseeable at the time the contract was made. Aquanova contends that attorneys' fees are a foreseeable loss specifically

recoverable under Article 74. House disagrees. The controversial words in Article 74 are "a sum equal to the loss," and the question is whether "loss" includes attorneys' fees.

The Seventh Circuit Court of Appeals is the only U.S. appellate court to address the issue. It held, in *Zapata Hermanos Sucesores S.A. v. Hearthside Banking Co.*, 313 F.3d 385 (7th Cir. 2002), that attorneys' fees are not a recoverable loss under Article 74 of the CISG. In so holding, that court explained that attorneys' fees are an issue outside the substantive law of contracts governed by the CISG. Instead, they are left open to domestic law and the rules governing choice of law in international disputes. *Id.* at 388.

*Zapata*, however, is widely criticized in academic literature, both for its holding and for its reasoning. *See, e.g.*, Peter Schlechtriem, *Legal Costs as Damages in the Applicatin of UN Sales Law*, 25 J. L. & Com. 71 (2007–08); David Dixon, *Que Lastima Zapata! Bad CISG Ruling on Attorneys' Fees Still Haunts U.S. Courts*, 38 U. Miami Inter-Am. L. Rev. 405 (2007); Marlyse McQuillen, *Note: The Development of a Federal CISG Common Law in U.S. Courts: Patterns of Interpretation and Citation*, 61 U. Miami L. Rev. 509 (2007); John Flemegas, *An Interpretation of Article 74 CISG by the U.S. Court of Appeals*, 15 Pace Int'l L. Rev. 91 (2003); Jarno Vanto, *Attorneys' Fees as Damages in International Commercial Litigation*, 15 Pace Int'l L. Rev. 203 (2003); Peter Schlechtriem, *Case Comment: Attorneys' Fees as Recoverable Damages*, 14 Pace Int'l L. Rev. 205 (2002). The brunt of this criticism is focused on that court's perfunctory reliance on U.S. law, its cursory treaty analysis, and its failure to consider CISG Article 7. Although there are persuasive arguments both for and

against adopting *Zapata*, there is no need to settle the debate now because Aquanova is entitled to reasonable attorney's fees whether or not the holding in *Zapata* is adopted.

If *Zapata* is not adopted and it is instead held that attorneys' fees are a recoverable loss under Article 74 of the CISG, then Aquanova would certainly be entitled to recover its attorneys' fees. While Article 74, does limit the recoverable losses to those that are foreseeable, there is nothing to suggest that the attorneys' fees in this case were either unusual or unforeseeable.

If, however, *Zapata* is adopted, Aquanova would still be entitled to its reasonable attorneys' fees. This is because *Zapata* fell short of holding that a party is precluded from ever recovering attorneys' fees in CISG litigation; it simply held that attorneys' fees are not covered by Article 74. 313 F.3d at 389. Attorneys' fees are instead a procedural matter governed by choice of law rules in international legal disputes, and those rules point to domestic law. *Id.* at 388; *see also* CISG Article 7(2). In the United States, that means attorneys' fees are governed by the law of the forum state, which in this case is Arkansas. *Zapata*, 313 F.3d at 388; *Reliance Ins. Co. v. Tobi Engineering Inc.*, 735 F.Supp. 326 (W.D. Ark. 1990).

Under Arkansas law, a court may award reasonable fees to the successful party in a breach of contract case. Ark. Code. Ann. § 16-22-308. Indeed, a breach of warranty claim, as is at issue here, is a claim in contract where the plaintiff seeks redress for the failure of the defendant to perform as promised in the contract. *Bankston v. Pulaski County School Dist.*,

665 S.W.2d 859, 861–62 (Ark. 1984). Aquanovas's claim to fees is complicated, however, because it also alleged negligence and misrepresentation. Although these claims relate to the formation and performance of the contract, they are essentially tort claims; and in Arkansas a party may not recover attorneys' fees under Ark. Code. Ann. § 16-22-308 for prevailing on a claim based in tort. *Wheeler Motor Co., Inc. v. Roth, 867 S.W.2d 446*, 451 (Ark. 1993).

While Aquanova pressed claims in both tort and contract, the jury ultimately found in its favor on the claims of breach of warranty and negligent misrepresentation. In apportioning the liability for the negligent misrepresentation claim, the jury found Aquanova thirty-percent liable for the losses. Because Aquanova sought economic damages, this finding of contributory negligence prevented it from any sort of recovery for negligent misrepresentation. *E.D. Smith & Sons, Ltd. v. Arkansas Glass Container Corp.*, 236 F.3d. 920, 921 (8th Cir. 2001); Def.'s Tr. Br. [Doc. No. 117]. Aquanova's breach of warranty claim, however, provided an independent and sufficient reason for full recovery. Based on the jury's finding in its favor on this claim, Aquanova was awarded the full $675,000 in damages. Thus the full amount of Aquanova's recovery came from its breach of contract claim.

The Arkansas Supreme Court, however, has held that nothing in Ark. Code. Ann. § 16-22-308, entitles a party to an award of all attorney's fees in cases where multiple claims have been pursued. *FMC Corp. v. Helton*, 202 S.W.3d 490, 507 (Ark. 2005). *FMC* and its predecessors are ambiguous about the results in a case where, as in this one, a party sues

under multiple theories of tort and contract but recovers its full award solely under its contract claims. At trial, it was clear that the issues of contract and tort were intimately connected, with overlapping evidence and claims. Plaintiff's counsel does admit that 5.1 percent of their time was spent exclusively working on tort claims, and in the face of this admission it is proper to reduce their attorneys' fees by a proportionate amount

An award of attorneys' fees is not required by Ark. Code. Ann. § 16-22-308, but is instead left to the discretion of the trial court. *Perry v. Baptist Health*, 238 Ark. 114, 116 (2006). To guide this discretion, the Arkansas Supreme Court has articulated a variety of factors, including: (1) experience and ability of the attorneys; (2) time and labor required to perform the legal service; (3) amount involved in the case and the results obtained; (4) the novelty and difficulty of the issues involved; (4) the fee customarily charged in the locality; (5) whether the fee is fixed or contingent; (6) the time limitations imposed on the client; (7) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. After considering these factors, especially the time and labor requirements of this case (in part brought on by the litigation strategy taken by counsel for House) and the novelty and difficulty of the legal issues, it is clear that Aquanova is entitled $423,954.45 in attorneys' fees.

## II. COSTS

Aquanova also requests [Doc. Nos. 127, 132] an award of $31,423.32 in costs pursuant to Federal Rule of Civil Procedure 54(d)(1). As employed in Rule 54(d)(1), costs

refer to expenses that may be taxed to the opponent under 28 U.S.C. § 1920, including: (1) fees of the clerk and marshal; (2) fees for the court reporter; (3) fees for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case; (5) docket fees; (6) compensation for court appointed experts and compensation for interpreters or the special costs of interpretation.

A.    $610.00 in fees to the clerk

These costs are awarded because House has not objected to them and they were reasonable and necessary.

B.    $350.70 in process server fees

In *Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985), the Eighth Circuit clearly stated that fees associated with the use of a special process server are not recoverable because 28 U.S.C. § 1920 (1982) contains no specific provision for taxing such expenses. As such, Aquanova is not entitled to these costs.

C.    $5,491.06 for printed or electronically recorded transcripts

Transcription costs are taxable if a deposition was necessarily obtained for use in the case and not merely investigative. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006). The determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that might later render the deposition unneeded for further use. *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363

(8th Cir. 1997). Aquanova is only seeking costs for depositions of witnesses who actually appeared at trial. As such, the depositions were necessary, and Aquanova is entitled to these costs.

D.     Witness Fees

Aquanova claims witness fees for Lyman Scribner, Eduardo Avalos, and Margarita Aguilar. Although the expenses of witnesses are taxable costs, the rates of compensation are expressly set by statute. *See* 28 U.S.C. §1821. This means that a party will often recoup far less than the costs incurred. *See,* 10 Wm. James Moore et al., *Moore's Federal Practice* § 54.103 (3d ed. 2010). Under the express terms of 28 U.S.C. § 1821, a witness is entitled to a daily attendance fee, travel expenses, and, in some circumstances, a subsistence allowance. The attendance fee is limited to a daily rate of $40.00, but includes the time spent going to and from the trial. 28 U.S.C. § 1821(b). The subsistence allowance is capped at the maximum amount allowable to employees of the federal government in the area of attendance. 28 U.S.C. § 1821(d).

For Lyman Scribner, Aquanova requests $1,685.27 in costs. This rate includes a daily fee of $40.00 for five days of attendance, a mileage cost of $21.60, and airfare expenses of $789.30. Aquanova is awarded these costs because they are both appropriate and documented. Aquanova also requests a subsistence allowance of $674.37 for five days and four nights of travel. Pursuant to 28 U.S.C. § 1821(d), Aquanova may recover a maximum of $484.00 for subsistence. Aquanova is awarded a total of $1,494.90 in costs for Lyman

Scribner.

For Eduardo Avalos and Margarita Aguilar, Aquanova requests $6,631.90 in costs. Although they filed this bill of costs at a later date, House had an opportunity to reply and no prejudice resulted from the late filing. Aquanova asks for an attendance fee of $280 for each Avalos and Aguilar. Although Aquanova says that this is for five days of trial attendance, what they must mean is that this is for five days of trial attendance and two days of travel (seven days at $40 per day would be $280). Additionally, Aquanova requests $984.04 for rental car and related expenses; $3,668.34 for combined transportation fees; and $1,221.52 for combined subsistence fees. The travel costs are appropriate and documented and the subsistence fees fall below the maximum to which Aquanova would be entitled under 28 U.S.C. § 1821(d). As such Aquanova is awarded $6,631.90 in witness costs for Aquilar and Avalos.

E.   $9,094.30 for exemplification and costs of making copies

Aquanova requests $9,094.30 for the costs of exemplification and making copies. These expenses appear reasonably necessary for trial. As such, Aquanova is awarded $8,693.58 for exemplification and copying.

F.   $1,306.00 for interpreters and costs of interpretation

Aquanova is entitled to $456.00 for translation services for documents necessary to pursue litigation. They are also entitled to $600.00 for interpretation services provided in

connection with Houses's deposition of Edaurdo Avalos and Sergio Mazon. Although Avalos—a native Spanish speaker—testified without an interpreter at trial, it is easy to understand why Aquanova would believe it necessary for a translator to be present for his first deposition. Aquanova is also entitled to $250.00 in airline cancellation fees incurred by its translators as a result of the cancelled settlement conference.

G.    $1,820.00 for fees related to the deposition of Lyman Scribner

Aquanova requests reimbursement for the hourly fees charged by Lyman Scribner for preparing and attending the deposition noticed by House. Pursuant to Federal Rule of Civil procedure 26(b)(4)(E) House is required to pay the reasonable fees for time spent responding to its discover requests. Therefore, these costs are reasonable and are hereby granted.

H.    $4,434.09 in costs incurred preparing and supporting its motion for attorneys' fees, prejudgment interest, and bill of costs

These costs are denied.

I.    Total

In total Aquanova is awarded $26,047.44 in costs.

### III. PREJUDGMENT INTEREST

Aquanova also requests prejudgment interest in the amount of $210,600.00 pursuant to Article 78 of the CISG and Arkansas law. The issue is whether prejudgment interest is mandatory under either the CISG or Arkansas law.

Article 78 of the CISG entitles a party to interest if the other contracting party "fails to pay the price or any other sum that is in arrears." The language of the CISG indicates that damages may be a "sum that is in arrears" only when the amount in question is liquidated at the time it becomes due. In this case, the damages were not liquidated, and Article 78 does not apply.

Under Arkansas law, prejudgment interest is mandatory whenever there is a means to fix the exact value of the damages at the time of the occurrence of the event that gives rise to the cause of action. *Pro-Comp Mgmt. v. R.K. Enters., LLC,* 272 S.W.3d 91, 94–95 (Ark. 2008). This means that the amount of damages must be ascertainable by mathematical computation without reliance on opinion or discretion. *Id.* In this case the jury ultimately had to decide if the appropriate measure of damages was restitution, lost profits, or some other measure. Because the jury had to determine what measure of damages best approximated the injury sustained by Aquanova, it cannot be said that there was a means to fix the exact value of the loss at the time House breached its contract.

Because Aquanova is not entitled to pre-judgment interest under either the CISG or Arkansas law, its motion for pre-judgment interest is denied.

IV. Conclusion

Aquanova's motion for attorneys' fees is granted in part and denied in part. It is awarded $423,954.45 for attorneys' fees. Likewise, Aquanova's motion for costs is granted in part and denied in part. It is awarded $26,047.44 for costs. Aquanova's motion for

prejudgment interest is denied.

IT IS SO ORDERED this 19th day of November, 2010.

*/s/ Brian S. Miller*
UNITED STATES DISTRICT JUDGE